IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

<div style="margin-left:2em">FILED 4/9/2003 2:28:18 PM, USDC, Southern District of Iowa</div>

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY (also d/b/a EMC INSURANCE COMPANIES),<br><br>    Plaintiff,<br><br>v.<br><br>COLLINS & AIKMAN FLOORCOVERINGS, INC.,<br><br>    Defendant. | NO:  4:02-CV-30467<br><br><br>**FIRST AMENDED COMPLAINT and JURY DEMAND** |

COMES NOW the Plaintiff, Employers Mutual Casualty Company (which, together with its affiliates, is also doing business as EMC Insurance Companies) ("EMC"), and for its cause of action against the Defendant Collins & Aikman Floorcoverings, Inc.("C & A") states as follows:

1.    Plaintiff Employers Mutual Casualty Company is an Iowa corporation with its principal place of business located in Des Moines, Iowa.

2.    Defendant C & A is a Delaware corporation with its principal place of business located at 311 Smith Industrial Boulevard, Dalton, Georgia.  At all times relevant hereto, C & A was doing business in Iowa, and thus is subject to the jurisdiction of the Iowa courts.

3.    The transaction at issue occurred in Polk County, Iowa, and thus venue is proper in this Court.

4.      The amount of damages at issue is in excess of that required to invoke the

jurisdiction of this Court.

5.      In 1996, EMC entered into discussions and negotiations with C & A for the

purchase of carpet for some of the areas in EMC's office buildings in downtown Des

Moines, Iowa.  During these discussions and negotiations, EMC discussed its particular

needs for carpet in these buildings, including but not limited to the ability to place the

carpet directly underneath chairs with rolling casters, without the need for plastic chair

mats.

6.      As a result of the discussions and negotiations, EMC purchased carpet from

C & A in 1996.  C & A represented that the carpet would meet EMC's particular needs, and

that the carpet would last for at least 15 years.  The carpet was installed at various locations

in EMC's buildings beginning in the fall of 1996 and continuing through 1998.

7.      Following installation, EMC utilized the services of ServiceMaster Carpet

Cleaning and Kimco Corporation for carpet cleaning and vacuuming services in its office

buildings.  The carpet cleaning and vacuuming services provided by ServiceMaster and

Kimco for the C & A carpet were the same as those used on other carpet at EMC's office

buildings and were the same and/or substantially similar to industry standard carpet cleaning

in Des Moines, Iowa.

8.      Within the first two years after installation of the C & A carpet, EMC began

to experience significant problems, including, but not limited to, premature

fading/whitening and excessive wear and tear.  The primary problem areas initially were

located directly underneath the rolling chairs.  By January of 2000, the carpet underneath

the chairs was worn to the point of being almost white in many areas.

9.      In mid-1999, EMC contacted C & A to notify it of the problems and to

request assistance in determining the cause of the problems and in resolving the problems.

In this respect, EMC looked to C & A personnel as the experts in this area.

10.      EMC received no response from C & A until well into the year 2000.

11.      Throughout the year 2000, EMC and C & A held various meetings.  In

addition, C & A inspected and tested the carpet in an attempt to determine the cause of the

problems.  As a result of these meetings, investigations and tests in the year 2000, C & A

agreed that there were significant problems with the carpet and told EMC that they did not

know what was causing the problems.

12.      During this time period in 2000, a representative from C & A specifically

told EMC that cleaning and maintenance were not the cause of the problems.

13.      The meetings, inspections and tests continued throughout the year 2001.

During most of the year of 2001, C & A continued to agree that there were significant

problems with the carpet and continued to state that it did not know what was causing the

problems.

14.      During the meetings in 2001, C & A sent a copy of its standard express

warranty to EMC.  The C & A express written warranty referenced the C & A

approved/required maintenance procedures.  The express warranty was not signed by either

EMC or C & A.  This was the first time that EMC had ever received a copy of any express

warranty from C & A.  This was also the first time that EMC had ever received any reference to C & A's approved/required maintenance requirements.

15.     Finally, in October of 2001, C & A (in contradiction of its earlier representations) took the position that the cause of the problems was lack of and/or improper maintenance of the carpet, and that C & A had no obligation to remedy the problems.

16.     During the two year period from when EMC first notified C & A of the problems in mid-1999 to October of 2001, the condition of the C & A carpet deteriorated significantly and the problems increased significantly.

17.     EMC has requested that C & A remedy the faulty carpet either by replacing all carpet at C & A's cost or by paying damages to EMC for the cost of replacing the carpet. To date, C & A has refused these requests.

**COUNT I**
**BREACH OF IMPLIED WARRANTY**
**OF FITNESS FOR PARTICULAR PURPOSE**

18.     EMC realleges and incorporates by reference paragraphs 1 through 17 as though fully set forth herein.

19.     At the time of the sale to EMC, C & A knew or had reason to know of the particular purpose of the carpet for EMC.

20.     C & A knew or had reason to know that EMC was relying on C & A's skill and judgment in selecting and furnishing the carpet to EMC.

21.     EMC relied on C & A's skill and judgment in purchasing the carpet.

22.     The carpet was not fit for EMC's particular purpose, due to its significant

problems, including but not limited to premature fading/whitening and excessive wear and

tear.

23.     The failure of the carpet to fit EMC's particular purpose was a proximate

cause of damages to EMC.

24.     EMC timely provided notice to C & A of the problems.

WHEREFORE, EMC demands judgment against C & A in an amount to be

determined at trial, including compensatory damages, interest, costs, reasonable attorneys'

fees and such other relief as the Court deems just and proper.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

25.     Plaintiff realleges and incorporates by reference paragraphs 1 through 24 as

though fully set forth herein.

26.     C & A was a merchant at the time it sold the carpet to EMC.

27.     The carpet was not merchantable, due to its susceptibility to significant

problems, including but not limited to premature fading/whitening and excessive wear and

tear.

28.     EMC timely provided notice to C & A of the problems.

29.     The lack of merchantability of the carpet was a proximate cause of damages

to EMC.

WHEREFORE, EMC demands judgment against C & A in an amount to be determined at trial, including compensatory damages, interest, costs, reasonable attorneys' fees and such other relief as the Court deems just and proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY (IN THE ALTERNATIVE)

30.    Plaintiff realleges and incorporates by reference paragraphs 1 through 29 as though fully set forth herein.

31.    EMC contends that the C & A express written warranty is not effective, because it was not supplied to EMC until long after problems arose.  However, if the express written warranty is effective, then EMC submits that C & A breached this express written warranty.

32.    C & A sold the carpet and expressly warranted it for 15 years or more of use.

33.    The carpet did not conform to the express warranty.

34.    The breach of the express warranty was a proximate cause of damages to EMC.

WHEREFORE, EMC demands judgment against C & A in an amount to be determined at trial, including compensatory damages, interest, costs, reasonable attorneys' fees and such other relief as the Court deems just and proper.

## COUNT IV
## NEGLIGENCE

35.    Plaintiff realleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36.     C & A owed EMC a duty to, among other things, provide suitable carpet for EMC's needs, advise EMC of necessary maintenance requirements, and respond timely to any problems EMC experienced with the carpet.

37.     C & A breached its duties and was negligent in one or more of the following ways:

a.     providing carpet that was not suitable for EMC's needs;

b.     failing to inform EMC that the C & A carpet required maintenance procedures that go beyond industry standards and cost significantly more than those procedures recognized as industry standards;

c.     failing to provide EMC with a copy of, or to notify EMC about, the C & A recommended/required maintenance procedures;

d.     allowing almost two years to pass by, following notice from EMC of problems with the carpet, before notifying EMC that C & A believed the cause of the problems was failure to follow recommended/required maintenance procedures; and

38.     C & A's negligence was a proximate cause of damages to EMC.

WHEREFORE, EMC demands judgment against C & A in an amount to be determined at trial, including compensatory damages, interest, costs, reasonable attorneys' fees and such other relief as the Court deems just and proper.

## COUNT V
## NEGLIGENT MISREPRESENTATION

39.     Plaintiff realleges and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40.    C & A negligently supplied and/or omitted the following information:

a.    failing to inform EMC that the carpet required maintenance procedures that go beyond industry standards and cost significantly more than those procedures recognized as industry standards;

b.    failing to provide EMC with a copy of, or to notify EMC about, the C & A approved/required maintenance procedures;

c.    failing to notify EMC during most of the two-year investigation period that C & A believed maintenance was the cause of the problem, thereby resulting in further deterioration of the carpet;

d.    representing that the C & A carpet could be used under rolling chairs without the need for chair mats; and

e.    failing to notify EMC that if it used rolling chairs on the C & A carpet without chair mats, that it should expect to experience crushing and whitening/greying of the carpet.

41.    C & A had a financial interest in supplying and/or omitting this information.

42.    C & A intended to supply and/or omit the information for the benefit and guidance of EMC.

43.    C & A intended the information to influence the transaction between it and EMC.

44.    EMC justifiably relied on C & A to provide truthful and complete information about the carpet.

45.     C & A's negligent misrepresentations and omissions were a proximate cause

of damages to EMC.

WHEREFORE, EMC demands judgment against C & A in an amount to be

determined at trial, including compensatory damages, interest, costs, reasonable attorneys'

fees and such other relief as the Court deems just and proper.

## COUNT VI
## FRAUDULENT MISREPRESENTATION AND NONDISCLOSURE

46.     Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as

though fully set forth herein.

47.     Special circumstances existed which gave rise to a duty of disclosure

between EMC and C & A.

48.     C & A made the following false representations and omissions:

a.     failing to inform EMC that the carpet required maintenance procedures that

go beyond industry standards and cost significantly more than those procedures recognized

to industry standards;

b.     failing to provide EMC with a copy of, or to notify EMC about, the C & A

approved/required maintenance procedures;

c.     failing to notify EMC during most of the two-year investigation period that C

& A believed maintenance was the cause of the problem, thereby resulting in further

deterioration of the carpet;

d.     representing that the C & A carpet could be used under rolling chairs without

the need for chair mats; and

e.     failing to notify EMC that if it used rolling chairs on the C & A carpet without chair mats, that it should expect to experience crushing and whitening/greying of the carpet.

49.     The representations and omissions were material.

50.     C & A knew its representations were false and knowingly failed to make the required disclosures to EMC.

51.     C & A intended to deceive EMC with its representations and omissions.

52.     EMC justifiably relied on C & A to provide truthful and complete information with respect to the carpet.

53.     C & A's misrepresentations and omissions were the proximate cause of damages to EMC.

54.     C & A's conduct constituted a willful and wanton disregard for the rights of EMC, and thus EMC is entitled to recover punitive damages.

WHEREFORE, EMC demands judgment against C & A in an amount to be determined at trial, including compensatory damages, punitive damages, interest, costs, reasonable attorneys' fees and such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff EMC hereby demands trial by jury of all issues in this cause of action.

BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.


By: _____/s/_____
          Todd A. Strother  PK16680
          801 Grand Avenue, Suite 3700
          Des Moines, IA  50309-2727
          Phone: (515) 246-5889
          Fax:  (515) 246-5808

     ATTORNEYS FOR PLAINTIFF

Copies to:

Kirk W. Watkins
Womble, Carlyle, Sandridge & Rice
One Atlantic Center
1201 West Peachtree Street, Suite 3500
Atlanta, GA 30309

William J. Koehn
The Financial Center
606 Walnut Street, Suite 2500
Des Moines, Iowa 50309-3993